**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

EMILIO AGUIRRE, III,

    Plaintiff,

    v.                                                              Case No. 08-C-1110

CORRECTIONAL OFFICER RICK WITEK,
NURSE JUDY MILLER,
NURSE BARBARA OBERHART,
NURSE MARKELLA REED,
and NURSE JO ANN MEDLEY,

    Defendants.

## DECISION AND ORDER

The pro se plaintiff, Emilio Aguirre, III, who is now incarcerated at Fox Lake Correctional Institution, is proceeding in forma pauperis on a civil rights claim under 42 U.S.C. § 1983. He alleges that the defendants were deliberately indifferent to his serious medical needs while he was confined in the Kenosha County Jail.

On August 21, 2009, defendant Witek filed a motion for summary judgment which the court denied by order of March 30, 2010. Pursuant to Pavey v. Conley, 544 F.3d 739 (7th Cir. 2008), the court determined that there was a material factual dispute over what administrative remedies were available to the plaintiff for purposes of exhaustion and stayed the merits-based portion of defendant Witek's motion until the question of exhaustion could be resolved. The order also provided that if defendant Witek waived his exhaustion defense and decided to proceed on the merits, the plaintiff would have additional time to conduct discovery on the merits.

By letter of April 12, 2010, defendant Witek advised the court that he wanted to waive his exhaustion defense, rather than undergo an evidentiary hearing on that issue. Accordingly, in an April 16, 2010, order, the court reinstated the merits-based portion of defendant Witek's summary judgment motion. In this order, the court permitted the plaintiff to serve additional discovery relating to the merits of the case. The order stated that "all requests for discovery related to defendant Witek shall be served by a date sufficiently early so that such discovery is completed no later than June 16, 2010." (Court's Order of April 16, 2010, at 2). Defendant Witek's motion for summary judgment is now fully briefed and will be addressed herein, along with the plaintiff's motion to compel discovery filed on June 15, 2010.

## **DEFENDANT WITEK'S MOTION FOR SUMMARY JUDGMENT**

### **Summary Judgment Standard**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that under the applicable substantive law "might affect the outcome of the suit." See Anderson, 477 U.S. at 248.

The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant. In determining whether a genuine issue of material fact exists, the court must

consider the evidence and all reasonable inferences in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587 (1986), Matter of Wade, 969 F.2d 241, 245 (7th Cir. 1992). The party with the ultimate burden of proof at trial retains its burden of producing evidence which would support a reasonable jury verdict. Anderson, 477 U.S. at 267; see also, Celotex Corp., 477 U.S. at 324. Defeating summary judgment requires more than just a "swearing match"; rather, the nonmoving party must present some evidence that a genuine issue of material fact exists. Wade, 969 F.2d at 245. Nonetheless, matters of credibility are not subject to resolution upon summary judgment. Wilson v. Williams, 997 F.2d 348, 350 (7th Cir. 1993).

### **Relevant Undisputed Facts**[1]

Plaintiff Emilio Aguirre, III, is a former inmate of the Kenosha County Jail (Jail). He was booked into the Jail on July 11, 2008, and released from that period of detention on September 2, 2008. At the time he was admitted to the Jail, the plaintiff had a medical condition requiring dialysis three times weekly. See Affidavit of Gary Preston [Preston Affidavit], Exh. B (July 11, 2008 nursing note regarding dialysis: "PC to St. Catherine's Hosp. (Dialysis Center). Pt. has a standing appt. weekly (MWF) @ 1100.").

Defendant Rick Witek is employed by Kenosha County as a correctional officer in the Sheriff's Department and was assigned to work second shift at the Jail on July 11,

---

[1] These facts are drawn from the plaintiff's verified complaint (Complaint) as well as the proposed findings of fact (Docket # 21) submitted by defendant Witek. The plaintiff did not respond to defendant Witek's proposed findings of fact, despite receiving the notice of the requirements of Rule 56(e) and (f) of the Federal Rules of Civil Procedure and Civil Local Rules 56(a) and (b) (E.D. Wis.). The court therefore accepts them as uncontroverted insofar as they are supported by admissible evidence, except where they conflict with the factual averments of the Complaint. The plaintiff filed a document captioned as "Plaintiff's Motion in Opposition to Defendant's Motion for Summary Judgment" (Docket # 55), containing additional unsworn allegations. The plaintiff did not submit an affidavit in opposition to defendant Witek's motion.

- 3 -

2008. He is not a medical professional and depends on the medical judgments made by the independent contractor medical professionals at the Jail. At all times relevant to this claim, Brian Doe, who is not a defendant, was a correctional officer and worked the second shift on July 11, 2008.

On July 11, 2008, the plaintiff awoke with difficulty breathing and had a bowel movement in his bed. He fell to the floor and a nurse was called. The nurse claimed that the plaintiff was faking. Defendant Witek and Correctional Officer Doe were not present when the plaintiff awoke and did not observe him have a bowel movement in his bed. The plaintiff did not report having a bowel movement in bed to either defendant Witek or Correctional Officer Doe.

At about 2:50 p.m. on July 11, 2008, the plaintiff returned from a court appearance to the Jail and told Correctional Officer Doe that he needed to go for dialysis treatment. The plaintiff did not indicate that he was feeling unwell or appear to be in any distress. He was talking without any difficulty and did not appear to be having any difficulty breathing. Officer Doe advised one of the nurses working in the Health Services Unit of his conversation with the plaintiff. The nurse told him that the plaintiff's dialysis appointment had been rescheduled and that he did not need to go out for dialysis that day. Correctional Officer Doe shared this information with the plaintiff. During this conversation, the plaintiff did not appear to be in any distress and asked for permission to use the phone to arrange for bond money. After confirming that the plaintiff was bondable, Officer Doe granted the plaintiff permission to use the telephone. At approximately 4:10 p.m., he observed that the plaintiff appeared to fine and to be joking with other inmates. Because the plaintiff was

unable to arrange for bond money, the plaintiff was then returned to his housing unit.

At about 5:10 p.m., the plaintiff told Correctional Officer Doe that he was not feeling well and needed to go to the hospital. Correctional Officer Doe relayed this to a nurse, who advised that the plaintiff would be fine until his off-site dialysis appointment, which was scheduled for 6:15 a.m. the next morning. Correctional Officer Doe returned to advise the plaintiff of the nurse's instructions and observed the plaintiff on the housing unit telephone, conversing and breathing without difficulty, and not showing any signs of distress. Correctional Officer Doe advised the plaintiff that he could lie down if he was not feeling well.

Shortly thereafter, Correctional Officer Doe responded to a 5:55 p.m. call from the plaintiff's housing unit and the plaintiff told him that water was coming out of a tube in his chest. The plaintiff, who was standing in his cell and breathing and talking without difficulty, did not appear to be in any distress. Officer Doe advised one of the nurses of the plaintiff's statement regarding the implanted tube. The nurse advised Officer Doe that the nurses would examine the plaintiff during the distribution of inmate medications.

At 6:10 p.m. a nurse responded to the plaintiff's report of liquid leaking from his dialysis port, but did not find any leakage. When the call button was pressed again, Correctional Officer Doe went to investigate. The plaintiff said he was coughing up blood and other inmates said that the plaintiff was throwing up. The plaintiff was speaking and breathing without difficulty and Correctional Officer Doe did not observe any indication in the plaintiff's cell that he had coughed up blood or vomited. Officer Doe decided to move the plaintiff to a single cell where the plaintiff would have closer access to a toilet and

would not expose a cell mate to any bodily fluids.

Defendant Witek responded to the plaintiff's cell to assist Correctional Officer Doe in escorting the plaintiff to another cell. When the officers told the plaintiff to come out, he told them that he could not walk on his own and needed a wheelchair.[2] Correctional Officer Doe then requested that a nurse come to assess the plaintiff in his cell. Two nurses came to the plaintiff's cell and decided to assess him in the Health Services Unit.

After assessing the plaintiff in the Health Services Unit, the nurses concluded that he did not need to go to the hospital. Their nursing notes indicate that the plaintiff's vital signs were within normal range at 6:25 p.m. on July 11, 2010:

> Pt. assessed re: c/o leaking [...] Pt. upset over not going to dialysis. Pt. VS WNR [Vital Signs Within Normal Range] pox 99% RA. B/P 160/90 – 110 – 22. Pt. continue c/o about wanting to go to the hospital for care, once pt. was told he would not be going out. He was escorted out of HSU by officer. Pt. continued arguing [with] staff re: going to hosp[ital]. Pt. was observed earlier on the phone [with] no distress at all. Dr. Akgubian updated on disconnecting port.; pt. sent to ER.

(Preston Affidavit, Exh. C).

At approximately 6:15 p.m., while defendant Witek was escorting the plaintiff to a new cell after the assessment, he observed a red substance which appeared to be blood running on the floor. The plaintiff "pulled [his] Dialysis port which [he] knew was

---

[2]The parties dispute the manner in which defendant Witek escorted the plaintiff. The plaintiff avers that defendant Witek carried him aggressively by his shirt collar and underwear, "which didn't help [his] breathing at all." (Complaint at 6). Defendant Witek denies this allegation and avers that he and Correctional Officer Doe merely held the plaintiff "so he could walk on his own" by "assisting to support his weight under his shoulders." (Affidavit of Rick Witek, ¶¶ 48-53). The parties also disagree as to when this escort occurred – the plaintiff avers that it took place after a nurse accused him of "faking" and "had [him] taken out of the Medical Ward and Transfered to X-Block which is segregation" (Complaint at 5), while defendant Witek avers that he assisted the plaintiff to the Health Services Unit by supporting his weight under his shoulders and then transported him towards X-Block in a wheelchair after the nurses' assessment.

- 6 -

dangerous," but he had to do something so he would be sent to the hospital. (Complaint at 6). Upon realizing that the plaintiff had removed a cap from the dialysis tube in his chest, defendant Witek radioed the Health Services Unit for assistance. Two nurses responded and determined a rescue squad needed to be called. When the rescue unit arrived, the plaintiff was transported via ambulance to the hospital due to his removal of his dialysis port. The nursing notes reflect an "ER update" on July 12, 2008 at 12:45 a.m., stating that the plaintiff was "admitted to St. Catherine's Hospital due to fluid over load, uncontrollable hypertension, and renal failure, pt recieving [sic] dialysis @ this time and again in the A.M. at St. Cath. hosp. ICU." (Preston Affidavit, Exh. C).

## **Analysis**

In support of his motion for summary judgment, defendant Witek asserts that he was not deliberately indifferent to the plaintiff's medical needs. Specifically, the defendant asserts that the plaintiff has not demonstrated that he had a serious medical need. He asserts that upon physical examination of the plaintiff, that his vital signs were within the normal range and he could wait 12 hours for his scheduled dialysis appointment. Defendant Witek contends that until the plaintiff "intentionally pulled out his dialysis port, knowing it was dangerous to do so, he was not in need of treatment for an 'objectively, sufficiently serious' medical need." (Defendant Witek"s Brief in Support of Summary Judgment [Defendant's Brief] at 13, citing Farmer v. Brennan, 511 U.S. 825 [1994]).

Defendant Witek also maintains that to the extent the plaintiff can demonstrate that he had a serious medical need, he was not deliberately indifferent to such need. He further contends that, at best, the plaintiff's claims amount to a mere difference of opinion

with the medical staff's medical judgment regarding the plaintiff's ability to wait until morning for his dialysis appointment and that defendant Witek was entitled to depend upon the medical judgments and treatment decisions made by the medical staff. Furthermore, defendant Witek maintains that even if the plaintiff states a constitutional claim relating to his medical care, the plaintiff cannot establish causation or injury. In addition, defendant Witek also asserts that he is entitled to qualified immunity.

In response, the plaintiff maintains that his need for dialysis constituted a serious medical need. He asserts in his brief that "Witek saw the bowels all over" and saw him on the floor "trying to get air into [his] lungs. (Plaintiff's Motion in Opposition to Defendant's Motion for Summary Judgment [Plaintiff's Brief in Opposition] at 3). The plaintiff further states that he is positive that only one correctional officer, defendant Witek, was involved with aggressively moving him from the medical ward. He also states that Officer Witek put him in a wheelchair and took him to the segregation area, rather than the Health Services Unit. Id. He maintains that he was "never escorted to the HSU [Health Services Unit] Nursing Station. Id. Additionally, the plaintiff contends that defendant Witek's grabbing him by the collar worsened his breathing and injured his groin, resulting in "pain and problems with my ejaculations over the last year and months." Id.

In reply, defendant Witek contends, citing Collingnon v. Milwaukee County, 163 F.3d 982, 991 (7th Cir 1998), that the plaintiff "cannot establish a serious medical need merely by pointing to the existence of a chronic illness for which appropriate medical treatment is maintenance, not curative." (Defendant Witek's Reply Brief at 3). Defendant Witek also submits that the plaintiff does not cite any evidence in the record to support the statements

made in his unsworn brief. Therefore, he maintains that the court should accept defendant Witek's proposed findings of fact as uncontroverted for purposes of the summary judgment motion.

At the outset, the court notes that the plaintiff brought his claim under the Eighth Amendment, although it appears from the record that he may have been a pretrial detainee rather than a sentenced prisoner on July 11, 2008. As a pretrial detainee, his claims would properly be framed in terms of the slightly broader protections provided by the Fourteenth Amendment's due process clause, rather than the Eighth Amendment's prohibition of cruel or unusual punishment. Lewis v. Downey, 581 F.3d 467, 473 (7th Cir. 2009). However, in the context of "claims of deliberate indifference to medical needs, the Eighth and Fourteenth Amendment standards are essentially interchangeable." Id.

The Eighth Amendment's prohibition of cruel and unusual punishment forbids deliberate indifference to a prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 103-05 (1976). A claim of deliberate indifference to a serious medical need contains both an objective and subjective component. Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006); Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). To establish a constitutional violation under the Eighth Amendment, two requirements are necessary: 1) "the deprivation must be objectively, 'sufficiently serious'" and 2) "a prison official must have a 'sufficiently culpable state of mind.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 297-98 [1991]). "An objectively serious medical need "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's

attention." Zentmyer v. Kendall County, 220 F.3d 805, 510 (2000) (quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 [7th Cir. 1997]); see also, Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006). A prison official is deliberately indifferent if he knows of a substantial risk of harm and disregards that risk. Edwards v. Snyder, 478 F.2d 827, 831 (7th Cir. 2007).

The record in this case reflects that the plaintiff had a medical condition requiring routine dialysis three times per week. Relying on Collingnon v. Milwaukee County, 163 F.3d 982, 991 (7th Cir 1998), defendant Witek contends that the plaintiff "cannot establish a serious medical need merely by pointing to the existence of a chronic illness for which appropriate medical treatment is maintenance, not curative." (Defendant Witek's Reply Brief at 3). However, Collingnon does not support this proposition, as it explicitly recognized a duty to treat a jail inmate's potentially incurable chronic mental illness during his confinement:

> The County had a duty to provide reasonable safety to Jonathan while he was a pre-trial detainee and to provide for his basic medical needs. In the context of a chronically mentally ill person like Jonathan, that duty is principally one of maintenance rather than cure. . . .

163 F.3d at 991. While dialysis may be a maintenance treatment rather than curative, it generally signifies a serious medical condition that requires medical treatment. See e.g. Adkins v. Walker, 2010 WL 2232137 *5 (N.D. Ill. June 1, 2010) ("Plaintiff's end-stage renal disease constitutes a serious medical need."). Accordingly, drawing all inferences in the plaintiff's favor at summary judgment, a reasonable fact-finder could conclude that the plaintiff suffered from an objectively serious medical condition on July 11, 2008.

Turning to the subjective question of deliberate indifference, the issue is whether this record supports a finding that defendant Witek was aware of a substantial risk of harm to the plaintiff and disregarded that risk. As defendant Witek points out, the plaintiff did not submit any admissible evidence to support his assertion that defendant Witek was aware of his difficulty breathing and his bowel movement in bed. Nor did the plaintiff submit any admissible evidence to support his assertion that defendant Witek injured his groin, or that defendant Witek did not take him to the Health Services Unit.

The plaintiff claims that defendant Witek escorted him roughly at a time when he was too weak to walk. Defendant Witek denies using any force other than supporting the plaintiff under his shoulders to allow him to walk to the Health Service Unit. However, accepting the plaintiff's version of events that defendant Witek grabbed him by the collar of his shirt and by his underwear and that this "didn't help" his breathing, such inconsiderate physical handling of the plaintiff still would not state a constitutional claim, as the plaintiff submitted no affidavit or other evidence suggesting that he was injured, and his complaint describes the use of only minimal force. See Wilkins v. Gaddy, 559 U.S. ___,130 S.Ct. 1175 (2010) (per curiam) (stating that "an inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim" and that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'") (quoting Hudson v. McMillian, 503 U.S. 1, 9 [1992] [per curiam]).

Aside from the claim that defendant Witek escorted him too roughly, the plaintiff does not submit any evidence to suggest that defendant Witek disregarded a known risk to the plaintiff's health. The undisputed facts establish that defendant Witek and Officer

Doe referred all of the plaintiff's complaints to the nurses and relied on the nurses' evaluations of what medical care was needed. Therefore, defendant Witek was not deliberately indifferent to the plaintiff's medical needs and he is entitled to summary judgment. See Hayes v. Snyder, 546 F.3d 516, 527 (7th Cir. 2008) ("The policy supporting the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care is a sound one."); see also Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010) ("[T]he law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so."). Accordingly, for the reasons stated herein, defendant Witek's motion for summary judgment will be granted.

## PLAINTIFF'S MOTION FOR DISCOVERY

On June 15, 2010, the plaintiff filed a motion for discovery. He requests the following: 1) camera recordings of July 11, 2008, when he was carried out of the medical ward of the Jail, 2) the location of inmate Patrick Jones, 3) a photograph of Correctional Officer Doe, 4) copies of incident reports signed by defendant Witek and Officer Doe, and 5) conduct reports for the plaintiff signed by defendant Witek relating to the incident. On June 28, 2010, defendant Witek filed a response, objecting to the motion on the grounds that he had already informed the plaintiff that no responsive camera recordings were located and that the other discovery requests were untimely because they were not submitted sufficiently early to meet the discovery deadline.

The plaintiff does not provide any reason for his belated discovery request, which

failed to comply with the court's order that "all requests for discovery related to defendant Witek shall be served by a date sufficiently early so that such discovery is completed no later than June 16, 2010." (Court's Order of April 16, 2010, at 2). Furthermore, defendant Witek states that the requested recordings do not exist, and none of the other materials requested appear likely to affect the outcome of this summary judgment motion. Moreover, all motions to compel discovery require a written certification that:

> . . . after the movant in good faith has conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action, the parties are unable to reach an accord. The statement must recite the date and time of the conference or conferences and the names of all parties participating in the conference or conferences.

Civil Local Rule 37 (E.D. Wis.). The motion before the court neither indicates that the plaintiff made any demand of the defendants prior to filing his motion to compel nor states that he attempted to consult with opposing counsel before filing his motion to compel. Accordingly, the motion to compel will be denied.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's motion for discovery (Docket # 49) be and hereby is **denied**.

**IT IS FURTHER ORDERED** that defendant Witek's motion for summary judgment (Docket # 20) be and hereby is **granted**.

**IT IS FURTHER ORDERED** that defendant Witek be and hereby is **dismissed** from this lawsuit.

**IT IS FURTHER ORDERED** that the court's June 1, 2010 scheduling order (Docket # 48) be and hereby is **modified** with regard to the claims against the nurse defendants.

All relevant discovery on those claims shall be completed by **October 5, 2010**, and any dispositive motions shall be filed on or before **November 5, 2010**.

Dated at Milwaukee, Wisconsin this 19th day of August, 2010.

BY THE COURT:

/s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge